IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHN RYMAN,** *et al.,* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-17-1757 |
| **FIRST MORTGAGE CORPORATION,** *et al.,* | * | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

The Class Action Complaint in this case alleges that Defendant First Mortgage Corporation ("FMC") violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a) and (b), by entering into a kickback scheme whereby the Defendant received unearned fees from Genuine Title, LLC for referrals. (ECF No. 1.) Plaintiffs also seek to pierce the corporate veil to hold Defendant Health One Credit Union ("Health One") liable, and seeks to hold New England Federal Credit Union ("NEFCU") liable by way of successor liability. (*Id.* ¶¶ 133-181.)

Now pending are the Defendants' Motions to Dismiss (ECF Nos. 20, 26). This Court has reviewed the parties' submissions and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the Defendants' Motions to Dismiss (ECF Nos. 20, 26) are GRANTED.

1

# BACKGROUND

I. *Fangman v. Genuine Title* **(RDB-14-0081)**

The alleged kickback scheme in this case involves Genuine Title, LLC ("Genuine Title"), which has an extensive history with this Court. In December 2013, Edward and Vickie Fangman (represented by the same Plaintiffs' counsel in this case) filed a complaint in the Circuit Court of Baltimore County against Genuine Title involving essentially identical allegations as set forth in this case. (*See Fangman v. Genuine Title, LLC*, No. RDB-14-0081 (D. Md.), ECF Nos. 1, 2 ("*Fangman*").) The case was removed to this Court in January 2014. (*Fangman*, ECF No. 1.) The Fangmans alleged that Genuine Title, in exchange for the referral of title services on their mortgage loan, paid kickbacks to loan brokers and provided "marketing materials for free or at a drastically-reduced rate (collectively 'Free Marketing Materials') for various loan officers." (*Fangman,* Compl. ¶¶ 19-23, ECF No. 2.)[1]

As a part of discovery in the *Fangman* action, Plaintiffs' counsel served a document subpoena on First Mariner Bank on July 14, 2014. (*Fangman*, ECF No. 150-3 at 126-30.) That subpoena requested that First Mariner produce records relating to:

(1) First Mariner's employment of Angela Pobletts;
(2) marketing materials provided or paid for by Genuine Title;
(3) payments, incentives and/or prizes received from Genuine Title;
(4) communications with Genuine Title without any limitations; and
(5) First Mariner's relationship with Genuine Title.

(*Fangman*, ECF No. 150-3 at 126-30.)

Genuine Title went bankrupt in 2014, and Plaintiffs' counsel, Smith, Gildea, & Schmidt, LCC began to obtain access from Genuine Title's receiver to the company's

---

[1] Even prior to the *Fangman* suit, in December 2012, a putative class action alleging the same kickback scheme was filed against Genuine Title and a number of financial institutions. *Roach v. Wells Fargo Bank, N.A.*, Case No. WDQ-l2-03800 (D. Md.). The Plaintiffs in that case voluntarily dismissed their claims in April 2013. (*See* ECF Nos. 36, 37, 39.)

documents and records, including its computer servers. *See Edmondson v. Eagle National Bank*, No. RDB-16-3938, 2018 WL 582514 at *1 (D. Md. Jan. 29, 2018). In early 2015, Plaintiffs' counsel used these records to identify and notify affected borrowers and prospective plaintiffs. *Id.* By June 2015, Plaintiffs' counsel was "able to pull data . . . that appears to represent . . . buyers' names, addresses, telephone numbers, property addresses, settlement dates, lender and in some cases mortgage broker information." (*Fangman*, Pls.' Resp. Mem. Protective Order at 7, ECF No. 150-2.)

On January 2, 2015, plaintiffs in *Fangman* filed a First Amended Complaint naming other financial institutions. (*See Fangman*, ECF No. 47.) That First Amended Complaint alleged violations of (a) RESPA, (b) Maryland's state-law analog to RESPA, Md. Code, Real Property § 14-127, and (c) the Maryland Consumer Protection Act, Md. Code, Comm. Law § 13-301. (*See id.*)[2] The *Fangman* plaintiffs further alleged that Genuine Title and its affiliated marketing companies provided Free Marketing Materials and/or "Referring Cash" payments without disclosure on HUD-1 settlement documents. (*Id.* ¶ 3.)

Plaintiffs in *Fangman* filed a Second Amended Complaint on May 20, 2015, adding additional parties and clarifying some of their previous allegations. (*See Fangman*, ECF No. 138.) In addressing various motions to dismiss, this Court ruled that equitable tolling may be available under RESPA and that the *Fangman* plaintiffs' claims were not time-barred. *Fangman*, 2015 WL 8315704, at *7. In so holding, this Court applied the equitable tolling test from *Grant v. Shapiro*, 871 F. Supp.2d 462 (D. Md. 1998) that provides, "a plaintiff must allege with specificity fraudulent concealment on the part of the defendants and the inability of the plaintiff, despite due diligence, to discover the fraud." *Fangman*, 2015 WL 8315704, at

---

[2] Plaintiffs in this case only assert their claims under RESPA. (ECF No. 1 at 34-36.)

*7 (citing *Grant*, 871 F.Supp.2d at 470 n.10). This Court applied that test in the *Fangman* action in the context of plaintiffs' counsel's significant investigatory efforts, which by June 2015 had successfully identified borrowers referred to Genuine Title between 2006 through 2013. *See Fangman v. Genuine Title, LLC*, 2016 WL 6600509, at *2 (D. Md. Nov. 8, 2016). Accordingly, this Court found in December 2015 that facts had been sufficiently concealed from the *Fangman* plaintiffs, who did not know about their claim until contacted by counsel. *Fangman*, 2015 WL 8315704, at *7. In terms of due diligence, this Court found:

> Plaintiffs' counsel has undergone a large-scale review of Defendant Genuine Title's computer system. It is only through this review, aided by early discovery and a proprietary software system, that potential plaintiffs have been identified. The Second Amended Complaint, filed by Plaintiffs' counsel, clearly states that "[a]ll Plaintiffs learned of the illegal kickbacks less than one year prior to filing of the [Second Amended] Complaint and could not have known about the Kickback Scheme until contacted by undersigned counsel." Second Am. Compl. at ¶ 94, ECF No. 138. In light of these unique circumstances, Plaintiffs have demonstrated that equitable tolling is warranted in this case and that all Plaintiffs, with the exception of the Eagle National Plaintiffs, brought their claims within one year of the date they could have first known of their cause of action through due diligence.

*Fangman,* 2015 WL 8315704, at *7.

Following discovery concerning Genuine Title's business practices and relationship with other lenders, some defendants (e.g., Wells Fargo, JP Morgan Chase, and PNC) have struck class settlements which have been the subject of public filings and class notices. (*See, e.g., Fangman*, Final Approval Order regarding PNC settlement, ECF No. 479 (Aug. 9, 2017); *see also* NEFCU's Mem. at 7 n.5, ECF No. 20-1.)

## II. Enforcement Actions by the federal Consumer Financial Protection Bureau ("CFPB") and Maryland Attorney General

Meanwhile, the Consumer Financial Protection Bureau ("CFPB") and the Maryland Attorney General initiated an enforcement action in this Court on January 22, 2015 against

4

Wells Fargo Bank, N.A. and JPMorgan Chase Bank, N.A. predicated on similar schemes involving Genuine Title. (*See CFPB v. Wells Fargo Bank, N.A.*, Case No. RDB-15-0179 (D. Md.) ("*Lender Enforcement Action*").) The pendency and ultimate settlement of the *Lender Enforcement Action* in January 2015 was widely publicized. Specifically, the CFPB issued a press release on January 22, 2015, and local and national news media, including *The Baltimore Sun*, CNN, and the *New York Times*, published stories about the case. (*See* NEFCU's Exhibits 1-3, ECF Nos. 20-2 through 20-4.)

The CFPB and Attorney General also filed an enforcement action on April 29, 2015 directly against Genuine Title, its principals, and affiliates arising out of the same alleged scheme. (*See CFPB v. Genuine Title LLC*, Case No. RDB-15-1235 (D. Md.) ("*Genuine Title Enforcement Action*")). The CFPB issued a press release on April 29, 2015 in which the CFPB outlined the enforcement action against Genuine Title based on the same facts alleged by the *Fangman* plaintiffs. On May 1, 2015, the CFPB and Maryland Attorney General announced a settlement with Genuine Title, and this Court entered a Stipulated Final Judgment and Order approving the settlement. (*See Genuine Title Enforcement Action*, ECF No. 18.) As with the *Lender Enforcement Action*, the *Genuine Title Enforcement Action* settlement was also reported by various news media outlets and other publications in May 2015. (*See Dobbins v. Bank of America, N.A.,* RDB-17-540 (D. Md.), ECF Nos. 17-3, 17-4.) The settlement orders in these enforcement actions explicitly contemplate related litigation by affected consumers (*see, e.g., Genuine Title Enforcement Action*, Genuine Title Order at 5, ECF No. 18), but it is important to note that neither the Consumer Financial Protection Bureau nor the Office of the Attorney General of Maryland required that any financial institutions issue additional formal notices to the public. Plaintiffs' counsel's oral argument to the contrary during the related consolidated

hearing is belied by the plain text of the settlement orders, which did not compel any further public notice. (*See Lender Enforcement Action*, JPMorgan Chase Order, ECF No. 10; *Lender Enforcement Action*, Wells Fargo Order, ECF No. 11.)

**III. Second Wave of Genuine Title Litigation**

Plaintiffs' counsel, who has been in possession of Genuine Title's records since 2014 and who processed the data – including buyers' names – by June 2015, has filed the following seven class actions against other lenders who, like the defendants in *Fangman*, allegedly engaged in kickback schemes with Genuine Title.

1. *Edmondson v. Eagle National Bank*, Civil Case No. RDB-16-3938 (D. Md.)
2. *Dobbins v. Bank of America, N.A.*, Civil Case No. RDB-17-540 (D. Md.)
3. *Callum v. Priority Financial Services*, Civil Case No. RDB-17-0623 (D. Md.)
4. *James v. Acre Mortgage & Financial*, Civil Case No. RDB-17-1734 (D. Md.)
5. *Baugh v. The Federal Savings Bank*, Civil Case No. RDB-17-1735 (D. Md.)
6. *Ryman v. First Mortgage Corporation*, Civil Case No. RDB-17-1757 (D. Md.)
7. *Bezek v. First Mariner Bank*, Civil Case No. RDB-17-2902 (D. Md.)

On October 31, 2017, Miles & Stockbridge, defense counsel in both *Edmondson* (RDB-16-3938) and *Bezek* (RDB-17-2902), requested a consolidated hearing on ripe motions to dismiss. (*Edmondson*, ECF No. 20.) Plaintiffs' counsel, Smith, Gildea & Schmidt, agreed to a consolidated hearing on the ripe motions to dismiss in five of the seven cases – namely, *Edmondson* (RDB-16-3938); *Dobbins* (RDB-17-540); *James* (RDB-17-1734); *Baugh* (RDB-17-1735); *Bezek* (RDB-17-2902). (*Edmondson*, ECF No. 21.)[3]

This Court conducted the requested consolidated hearing on January 16, 2018. After the hearing, this Court dismissed all five cases as the Plaintiffs had failed to establish they were entitled to equitable tolling.

---

[3] Plaintiffs' counsel requested that this case, *Ryman* (RDB-17-1757), and *Callum* (RDB-17-0623) be addressed separately. (*Edmondson,* ECF No. 21.) Motions practice in *Callum* is currently stayed pending settlement-related discovery. (*See Callum*, ECF No. 10.)

## IV. *Ryman v. First Mortgage Corporation* (RDB-17-1757)

On June 26, 2017, Plaintiffs' counsel filed the Class Action Complaint in this case on behalf of four Named Plaintiffs: John Ryman, Bobby Thomas, Thelma Thomas, and Kimberly Thomas. (ECF No. 1.) The Complaint alleges that, during the relevant time period, broker Angela Pobletts worked for First Mortgage Corporation ("FMC") and received kickbacks from Genuine Title in exchange for referrals of FMC borrowers. (*Id.* ¶¶ 60-63.) The Complaint further alleges that three other brokers, Frank Bisesi, Ernest "Steven" Greathouse and John Hauck, helped the Named Plaintiffs obtain residential mortgages from FMC and referred them to Genuine Title for title and settlement services. (*Id.* ¶¶ 89, 94, 100.) All four Named Plaintiffs obtained their mortgages from FMC in or around 2011. (*Id.* ¶¶ 88, 93, 99.) The four Named Plaintiffs in this case now seek to represent the following proposed class:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) originated or brokered by First Mortgage Corporation for which Genuine Title provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2009, and December 31, 2014. Exempted from this class is any person who, during the period of January 1, 2009 through December 31, 2014, was an employee, officer, member and/or agent of First Mort[]gage Corporation, Health One Credit Union, Genuine Title LLC, Brandon Glickstein, Inc., Competitive Advantage Media Group LLC, and/or Dog Days Marketing LLC.

(*Id.* at ¶ 117.)

FMC was incorporated under Michigan law by Health One in 1996, and Health One became the sole shareholder of FMC. (*Id.* ¶ 137.) Thereafter, Health One allegedly dominated FMC's board, management, and finances to such a degree that Health One was FMC's alter ego. (*See id.* ¶ 165.)

7

On May 16, 2014, the Director of the Michigan Department of Insurance and Financial Services ("DIFS") placed Health One in conservatorship because it was in an "unsound and unsafe condition." (*Id.* ¶ 167.) DIFS appointed the National Credit Union Administration ("NCUA") as the conservator, who thereby seized all of Health One's assets. (*Id.* ¶ 167.) As conservator, NCUA negotiated a Purchase & Assumption Agreement ("PAA") whereby NEFCU purchased certain assets and liabilities of Health One. (*Id.* ¶ 170-173.) All Health One shareholders automatically became NEFCU shareholders and members. (*Id.* ¶ 174.) On December 12, 2014, the same day the NEFCU entered into the PAA, NCUA was appointed as the receiver and liquidating agent for Health One. (*Id.* ¶ 173.)

Defendant NEFCU filed a Motion to Dismiss (ECF No. 20) on September 29, 2017. Defendants FMC and Health One filed a Motion to Dismiss (ECF No. 26) on October 26, 2017. In February 2018, following this Court's dismissals of the five related Genuine Title cases, NEFCU submitted a letter requesting the same ruling in this case. (ECF No. 32.) Plaintiffs' counsel responded, noting the personal and subject matter jurisdiction challenges specific to this case. (ECF No. 33.) Counsel for NEFCU then waived NEFCU's challenge to personal jurisdiction. (ECF No. 34.) FMC and Health One have not engaged in any post-briefing correspondence.

**STANDARD OF REVIEW**

I. **Rule 12(b)(6) Generally**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, to withstand a

motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (internal quotations and citation omitted). "A formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Similarly, "an unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Statute of Limitations & Equitable Tolling

A 12(b)(6) motion is an appropriate vehicle through which the Court may evaluate the affirmative defense of the statute of limitations "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *accord Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).

Even if a statute of limitations defense appears to have merit based upon the face of the complaint, a Court may exercise its equitable authority to toll the statute of limitations.[4] *Fangman*, 2015 WL 8315704, at *7 (citing *United States v. Kwai Fun Wong*, 135 S.Ct. 1625, 1630 (2015); *Grant v. Shapiro & Burson, LLP, et al.*, 871 F. Supp. 2d 462, 470 n.10 (D. Md. 2012)). In 2016, a *unanimous* United States Supreme Court held that equitable tolling requires the plaintiff to establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."

---

[4] As this Court confirmed in *Fangman*, equitable tolling applies to RESPA claims. *Fangman*, No. CV RDB-14-0081, 2015 WL 8315704, at *7 (citing *Kwai Fun Wong*, 135 S.Ct. at 1630; *Grant.*, 871 F. Supp. 2d at 470 n.10 (D. Md. 2012)).

*Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010)).[5] The Supreme Court emphasized these two requirements as "elements, not merely factors of indeterminate or commensurable weight." 136 S. Ct. at 756 (internal quotation marks omitted) (citing *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)).[6]

In *Menominee*, the Supreme Court has held that "the diligence prong . . . covers those affairs within the litigant's control." 136 S. Ct. at 756. This element requires "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653. The second element "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee,* 136 S. Ct. at 756 (emphasis in original). In other words, the circumstances must combine to render "critical information . . . undiscoverable." *Gould v. U.S. H.H.S*, 905 F.2d 738, 745–46 (4th Cir. 1990) (en banc). Courts have consistently held that fraudulent concealment by the defendant is a circumstance that may justify equitable tolling. *E.g., Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 71 F.3d 119, 122 (4th Cir. 1995); *Grant*, 871 F.Supp.2d at 470 n.10.

---

[5] The Supreme Court issued the *Menominee* decision after this Court's decision in *Fangman* applying *Grant v. Shapiro*, 871 F.Supp.2d 462, 470, n.10 (D. Md. 1998).

[6] Plaintiffs argue that *Menominee's* test, which comes from the habeas context, does not apply to this RESPA action involving alleged fraudulent concealment. (Pls. Opp'n to NEFCU's Mot. at 19 n.6, ECF No. 27-1; Pls. Opp'n to FMC's Mot. at 21-22, ECF No. 29-1.) This argument ignores that the Supreme Court in *Menominee* applied the test to a *contracts* case, and the decision admits of no exceptions to the test's applicability. Furthermore, the Fourth Circuit applied the *Menominee* test to a tax appeal claim in *Cunningham v. Commissioner of Internal Revenue*, No. 17-1433, 2018 WL 460854, at *2 (4th Cir. Jan. 18, 2018) (unpublished). Other circuits have applied the *Menominee* test in numerous other contexts as well. *E.g., Knauf Insulation, Inc. v. Southern Brands, Inc.*, 820 F.3d 904, 907-10 (7th Cir. 2016) (Sherman Act claim); *Villarreal v. R.J. Reynolds Tobacco Co., Pinstripe, Inc.*, 839 F.3d 958, 970-73 (11th Cir. 2016) (age discrimination claim). More directly on point, in a case that was bifurcated from the *Fangman* case before this Court, the United States District Court for the Southern District of Ohio determined that *Menominee* governs claims for equitable tolling of RESPA claims involving fraudulent concealment. *Palombaro v. Emery Federal Credit Union*, No. 15-792, 2017 WL 213071 at *5 n.5 (S.D. Ohio Jan. 17, 2017). *Menominee* therefore governs the equitable tolling analysis in this case.

In applying this test to the facts of the *Menominee* case, the Supreme Court found "no extraordinary circumstances" and therefore it had no need to "decide whether the Tribe was diligently pursuing its rights." 136 S.Ct. at 757, n.5.

The United States Court of Appeals for the Fourth Circuit has stressed that "equitable tolling is appropriate 'in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Cunningham v. Comm'r of Internal Revenue*, No. 17-1433, 2018 WL 460854, at *2 (4th Cir. Jan. 18, 2018) (quoting *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc)) (internal quotation marks omitted). Federal courts employ equitable tolling "sparingly," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), as it is "a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007).

## DISCUSSION

Plaintiff does not allege independent causes of action against Health One or NEFCU (*see* Pls. Opp'n to FMC's Mot. Dismiss at 13, ECF No. 29-1), and "[p]iercing the corporate veil is an equitable remedy." *Kinney Shoe Corp. v. Polan*, 939 F.2d 209, 211 (4th Cir. 1991) (citing *DeWitt Truck Brokers, v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 683 (4th Cir. 1976); *see also Peacock v. Thomas*, 516 U.S. 349, 354, 116 S. Ct. 862, 866–67, 133 L. Ed. 2d 817 (1996) (finding that piercing the corporate veil is not itself an independent cause of action, "but rather is a means of imposing liability on an underlying cause of action."). Plaintiffs' allegations against Health One and NEFCU are therefore entirely derivative of their RESPA cause of action against FMC. If Plaintiffs' underlying RESPA claim against FMC fails for any reason, their requests to hold Health One and NEFCU liable for FMC's alleged conduct must also fail as a matter of law.

Common to both Motions to Dismiss (ECF Nos. 20 and 26) is a statute of limitations defense, including the argument that Plaintiffs' have failed to state a plausible

claim for equitable tolling. As the Defendants' have incorporated each other's arguments on this issue (*see* FMC and Health One's Reply at 7, ECF 30 at 7; NEFCU's Reply at 18, ECF No. 28), this Court will focus on this common defense, which is dispositive in this case. Plaintiffs do not dispute that their claims only survive if this Court exercises its equitable authority to toll the statute of limitations. In *Menominee*, the Supreme Court held that equitable tolling requires a plaintiff to establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." 136 S. Ct. at 755.

### I. Materials Considered

As an initial matter, Defendants ask this Court to consider materials that are not integral to the Complaint (e.g., court filings in the *Fangman* and CFPB and Maryland Attorney General enforcement actions), and Plaintiffs assert a hearsay objection to these materials. Plaintiffs' counsel has also argued that the subpoena in *Fangman* related to Angela Pobletts does not qualify for the public record exception because it is a "needle in a haystack."

In considering a motion under Rule 12(b)(6), a district court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *accord Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). This Court may take judicial notice of "docket entries, pleadings and papers in other cases," *Brown v. Ocwen Loan Servicing, LLC*, PJM–14–3454, 2015 WL 5008763, *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. Appx. 200 (4th Cir. May 6, 2016), as well as "newspaper articles, analysts' reports, and press releases," *In re Human Genome Sciences Inc. Sec. Litig.*, 933 F. Supp.

2d 751, 758 (D. Md. 2013); *accord Sha v. GenVec Inc.*, No. DKC-12-00341, 2013 WL 5348133, *1 n.2 (D. Md. Sept. 20, 2013). The rule against hearsay does not bar materials offered to establish the date of public notice rather than the truth of the matter asserted. *See In re Human Genome*, 933 F. Supp. 2d at 758.

The court filings and news articles offered by the Defendants will help resolve the question of equitable tolling by establishing the date of public notice of Genuine Title's kickback practices. Regarding the Angela Pobletts subpoena (*Fangman*, ECF No. 150-3 at 126-30), Plaintiffs' counsel's argument that it would be hard to find among the *Fangman* filings does not limit its status as a matter of court record subject to judicial notice, especially when Plaintiffs do not challenge the document's authenticity, accuracy, or admissibility under the rule against hearsay. *See* 21B Wright & Miller, *Federal Practice & Procedure* § 5106.4 (2d ed. 2017) (discussing hearsay as primary limitation court record exception). This Court's consideration of these materials does not transform the pending motions to dismiss into motions for summary judgment. *See Tellabs,* 551 U.S. at 322 (2007); *Philips*, 572 F.3d at 180.

## II. Due Diligence

The parties have devoted considerable briefing to disputing the content of the due diligence requirement in the wake of *Menominee*, 136 S. Ct. 750. Defendants argue that *Menominee* essentially raised the bar to require affirmative acts of diligence even if the Plaintiffs had no inquiry notice of the need to pursue their rights in the first place. Defendants also ask this Court to follow *Cunningham v. M&T Bank Corp.,* 814 F.3d 156 (3d Cir. 2016), in rejecting the "lawyerly intervention" theory, whereby any plaintiff benefits from equitable tolling until contacted by diligent counsel, and in finding that participation in a loan transaction does not by itself fulfill due diligence. In response, the Plaintiffs note

language in the Fourth Circuit opinion in *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 7l F.3d 119 (4th Cir. 1995), permitting a plaintiff to satisfy that diligence requirement by establishing that she "was not (and should not have been) aware of facts that should have excited further inquiry." 71 F.3d at 128. According to the Plaintiffs, "no plaintiff could have reasonably and independently uncovered and discovered the kickback scheme before being contacted by counsel." (Pls.' Mem. Opp'n to NEFCU Mot. at 31, ECF No. 27-1.)

Even if Plaintiffs can establish that they were "pursuing [their] rights diligently," *Menominee*, 136 S.Ct. at 755, this Court cannot ignore the role Plaintiffs' counsel has played in determining the timing of this action – and the other pending cases related to the Genuine Title kickback scheme. In June 2015, Plaintiffs' counsel had access to Genuine Title's "buyers' names, addresses, telephone numbers, property addresses, settlement dates, lender and in some cases mortgage broker information," (*see Edmondson*, No. RDB-16-3938, 2018 WL 582514 at *1 (quoting *Fangman*, ECF No. 150-2 at 7), information sufficient to uncover the scheme in this case. Even if Plaintiffs' counsel's knowledge is not relevant to the due diligence analysis, counsel's in-depth investigation into Genuine Title's records certainly bears heavily on the question of whether "extraordinary circumstances" stood in the Plaintiffs' way and prevented timely filing. *Menominee*, 136 S.Ct. at 755.

### III. Extraordinary Circumstances

In an effort to establish the "extraordinary circumstances" element, the Plaintiffs assert that affirmative misrepresentations on HUD-1 forms constitute independent acts of concealment (ECF No. 27-1 at 21 (citing *In re Community Bank of No. Va. Mortg. Lending Prac. Litig., PNC Bank N.A.*, 795 F.3d 380, 403 (3d Cir. 2015)), and that the Defendants entered into "fraudulent, back-dated sham title services agreements" to further conceal the kickback

14

scheme (ECF No. 27-1 at 30). Plaintiffs' counsel has also claimed that the Defendant's *ongoing* failure to disclose the true nature of its relationship with Genuine Title by sending notices to all customers known to have used Genuine Title's services constitutes an act of *continued* concealment by the Defendant. Under these circumstances, Plaintiffs contend that they have satisfied the extraordinary circumstances element because they "could not have been[] aware of FMC's participation in the Kickback Scheme until contacted by counsel on or about March 10, 2017." (*Id.* at 23.)

While the Defendants do not challenge Plaintiffs' allegations with respect to fraudulent concealment (NEFCU's Reply 2, ECF No. 28),[7] the circumstances causing Plaintiffs' delay were not "extraordinary," nor was discovery of the claim "beyond [their] control." *Menominee,* 136 S. Ct. at 756. Plaintiffs' counsel filed suit against Genuine Title back in December 2013, issued a subpoena seeking information on FMC broker Angela Pobletts in July 2014, and acknowledged that counsel had extensive data on Genuine Title's victims by June 2015. (*Fangman*, ECF Nos. 1, 150-3, 150-2.) Accordingly, after that time, the Defendants' alleged fraudulent concealment was not the only circumstance delaying the filing of this lawsuit. In spite of this fact, Plaintiffs' view of equitable tolling essentially demands that this Court order Defendants, and similarly situated lenders, to broadly notify customers of a potential claim related to Genuine Title in order to stop the ongoing equitable tolling of any RESPA claim by any Genuine Title customer. This theory swallows RESPA's one-year statute of limitations, which was set by Congress, and asks this Court to regulate lenders in a way that was specifically not requested by the federal and state enforcement agencies that have actively investigated Genuine Title and its associated

---

[7] This concession is consistent with this Court's holding in *Fangman*, 2015 WL 8315704, at *7.

financial institutions. (*See Lender Enforcement Action* (RDB-15-0179), JPMorgan Chase Order, ECF No. 10; *Lender Enforcement Action*, Wells Fargo Order, ECF No. 11.)

Furthermore, the Defendants' alleged concealment effort did not "st[and] in [Plaintiffs'] way" up until the time they were contacted by counsel. *Menominee*, 136 S. Ct. at 755. In other words, it was easily *within the Plaintiffs' control* to discover a basis for their action in May 2015 at the latest,[8] almost two years prior to being contacted by counsel on March 10, 2017 and over two years prior to the filing of the Complaint on June 26, 2017. *See id.* at 756. Unlike in the *Fangman* case, the Plaintiffs in this case could have discovered a substantial amount of public information on Genuine Title's illegal scheme that was brought to light through the *Fangman* and enforcement litigation. The publicly available information was sufficiently specific and applicable to the Plaintiffs' mortgage transaction that contact by counsel was not the only method by which they could have learned of their claims. While Plaintiffs contend they were unaware of the *illegal* nature of the relationship between Genuine Title and FMC, they do not disclaim knowledge of having used Genuine Title for title and settlement services. (*See* ECF No. 1 at ¶¶ 89, 95, 100.) Public court records and publicly available news coverage indicated that Genuine Title, a defendant in *Fangman* and in the *Genuine Title Enforcement Action*, was potentially paying illegal kickbacks to mortgage brokers around the country. (*See* ECF Nos. 20-2 through 20-4.)[9]

---

[8] This time period is when the *Genuine Title Enforcement Action* settlement was reported by various media outlets and publications (*see Dobbins,* ECF No. 17-4), but this Court notes that Plaintiffs' claims may have been discoverable even earlier. On January 22, 2015, the CFPB and the Maryland Attorney General issued a press release regarding their joint enforcement action against Wells Fargo Bank, N.A. and JPMorgan Chase Bank, N.A. (*Dobbins*, ECF No. 17-3.), and local and national news media, including *The Baltimore Sun*, CNN, and the *Wall Street Journal*, published stories about the case (*see Dobbins*, ECF No. 17-4). In April 2015, the CFPB and Attorney General filed an enforcement action directly against Genuine Title, its principals, and affiliates arising out of the same alleged scheme. (*Genuine Title Enforcement Action*, RDB-15-1235, ECF No. 1).

[9] Underscoring the sufficiency of the public information, Plaintiffs in this case have even admitted, "This Court has substantial experience with the kickback scheme alleged in the Complaint." (Pls. Mem. Opp'n to NEFCU's Mot. at 1, ECF No. 27-1.)

The Plaintiffs have made no allegation that the Defendants' actions or a lack of access to public records, news, the internet, TV, or a phone placed such information outside their reach. They merely argue that they were not yet on "notice" of the need to search for such information. The issue of notice, however, is not relevant to the extraordinary circumstances analysis, which asks whether the circumstances combine to render "critical information, *reasonable investigation notwithstanding*, undiscoverable." *Gould*, 905 F.2d at 745–46 (emphasis added); *see also Supermarket of Marlinton*, 7l F.3d at 122 (requiring the plaintiff to show that it "failed to discover those facts within the statutory period, despite . . . the exercise of due diligence"). To consider notice or only that quantum of information discoverable by Plaintiff's reasonable diligence would essentially ignore the Supreme Court's holding in *Menominee,* 136 S.Ct. at 756, that diligence and extraordinary circumstances are two distinct elements. The Fourth Circuit's use of "notwithstanding" in *Gould*, 905 F.2d at 745–46, and "despite" in *Supermarket of Marlinton*, 7l F.3d at 122, underscore that these elements must exist *simultaneously*, with the extraordinary circumstances placing the discovery of critical information entirely outside the Plaintiffs' control.

In *Fangman*, this Court found that the Defendants' concealment efforts contributed to "unique" circumstances warranting equitable tolling, *Fangman*, 2015 WL 8315704, at *7, but the Plaintiffs here also seek equitable tolling of a RESPA claim based upon Genuine Title's kickback practices. Plaintiffs' claim for equitable tolling is not "unique" let alone "extraordinary" when the underlying claims and concealment efforts are nearly identical and when the prior Genuine Title litigation and subsequent media coverage rendered critical information discoverable.

Plaintiffs have not demonstrated that their case presents one of "those rare instances where . . . it would be unconscionable to enforce the limitation period against [them] and gross injustice would result." *Cunningham*, 2018 WL 460854, at *2. Plaintiffs' counsel has already secured significant awards for their efforts to hold Genuine Title and other financial institutions accountable for violating RESPA. (*See, e.g., Fangman*, Final Approval Order regarding Wells Fargo settlement, ECF No. 411.) Genuine Title went bankrupt, and Plaintiffs do not allege that the Defendants continue to receive illegal kickback payments through deceiving Plaintiffs or their fellow class members. Plaintiffs allege that between 2009 and 2014 they and other class members were "deprived of impartial and fair competition between settlement service providers in violation of RESPA and paid more for said settlement services" because Genuine Title used a portion of each settlement payment to cover the costs of their kickbacks to FMC. (ECF No. 1 at ¶ 193.) While the purported class may have some interest in accountability and financial compensation, Congress firmly expressed an interest in providing certainty to the real estate market when it set the RESPA statute of limitations at one year.[10] Given this context, it would not be unconscionable or grossly unjust to enforce RESPA's one-year statute of limitations.

To hold otherwise would make "[Plaintiffs'] counsel–and not the terms of the legislation passed by Congress–the master of the RESPA statute of limitation." *Edmondson*, No. RDB-16-3938, 2018 WL 582514 at *7 (quoting *Edmondson*, Mem. at 3, ECF No. 11-1). As this Court noted at the related consolidated hearing regarding *Edmondson* (RDB-16-3938), *Dobbins* (RDB-17-540), *James* (RDB-17-1734), *Baugh* (RDB-17-1735), *Bezek* (RDB-17-2902), Plaintiffs' theory of equitable tolling is essentially that fraudulent concealment automatically

---

[10] Compare, for example, the State of Maryland's three-year statute of limitations for civil actions such as fraud or personal injury claims. Md. Code Ann., Cts. & Jud. Proc. § 5-101.

places a statute of limitations in the hands of Plaintiffs' counsel. Only this Court, however, has the equitable authority to toll a statute of limitations. Plaintiffs' theory fails to identify any discernable boundary beyond which contacting potential plaintiffs would be too late, and it would open the courts to a flood of untimely claims. This Court cannot adopt such a boundless view and at the same time heed the Fourth Circuit's warning that equitable tolling be reserved for those "rare instances" where tolling would prevent an "unconscionable" or grossly unjust outcome. *Cunningham*, 2018 WL 460854, at *2.

In summary, Plaintiffs have failed to fulfill the extraordinary circumstances element required to equitably toll their RESPA claim. *Menominee,* 136 S. Ct. at 756. Plaintiffs proffer no amendment to the pleadings that could overcome this conclusion,[11] and Plaintiffs fail to show how any amount of discovery would aid this Court's analysis, *cf. Cunningham v. M&T Bank Corp.*, Case No. 12-cv-1238, 2013 WL 5876337 at *10 (M.D. Pa. Oct. 30, 2013); *Riddle v. Bank of Am. Corp.*, No. CIV.A. 12-1740, 2013 WL 6061363, at *7 (E.D. Pa. Nov. 18, 2013), *aff'd*, 588 Fed. App'x 127 (3d Cir. 2014). Plaintiffs' failure in this regard also places this case outside the trend observed in *Baruah v. Young*, 536 F. Supp. 356, 361 (D. Md. 1982) ("In most cases such a determination [of equitable tolling] cannot be made until a trial on the merits or at least the establishment of the non-existence of material fact issues.") Specifically, "when the complaint is viewed under the standards applicable to a motion under Rule 12(b)(6)," *id.* at 361, Plaintiffs' allegation that Plaintiffs "could not have known" about Genuine Title and FMC's kickback scheme is not plausible. As Plaintiffs have failed to establish the extraordinary circumstances element, this Court does not need to determine whether the Plaintiffs were diligently pursuing their rights. *Menominee*, 136 S. Ct. at 757, n.5.

---

[11] This Court therefore also DENIES Plaintiffs' alternative request for leave to amend the Complaint.

While the parties here earnestly contest the content of the due diligence requirement in the wake of *Menominee,* this Court finds no reason to address those contentions.

Plaintiffs also cannot seek equitable remedies for a cause of action that is barred by statute, so this Court need not wade into the fact-sensitive analysis of whether to equitably pierce the corporate veil to reach Health One or to track successor liability to NEFCU by way of Health One. *See Kinney Shoe Corp. v. Polan*, 939 F.2d 209, 211 (4th Cir. 1991) (citing *DeWitt Truck Brokers, v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 683 (4th Cir. 1976)); *see also Peacock v. Thomas*, 516 U.S. 349, 354, 116 S. Ct. 862, 866–67, 133 L. Ed. 2d 817 (1996).[12] This Court likewise declines to reach Defendants' alternative argument that the Plaintiffs' RESPA claim against FMC is barred by Michigan's statute of repose for claims against dissolved corporations. Mich. Comp. Laws § 450.1842a.

Accordingly, the Defendants' Motions to Dismiss (ECF Nos. 20, 26) are GRANTED.

## CONCLUSION

For the reasons stated above, the Defendants' Motions to Dismiss (ECF Nos. 20, 26) are GRANTED.

A separate Order follows.

Dated: April 17, 2018                                    /s/
                                                        Richard D. Bennett
                                                        United States District Judge

---

[12] That Plaintiffs' claims against FMC are barred as a matter of law also renders moot Health One's derivative challenge to subject matter jurisdiction.