## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN RYMAN, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-17-1757 |
| FIRST MORTGAGE | * | |
| CORPORATION, *et al.*, | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Class Action Complaint in this case alleges that Defendant First Mortgage Corporation ("FMC" or "First Mortgage"), a Michigan corporation doing business in Maryland, violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a) and (b), by entering into a kickback scheme whereby the Defendant received unearned fees from Genuine Title, LLC ("Genuine Title") for referrals. (ECF No. 1.) Plaintiffs John Ryman, Bobby Thomas, Thelma Thomas, and Kimberly Thomas (collectively, "Plaintiffs") furthermore seek to hold two other entities liable. Specifically, Plaintiffs are suing Defendant Health One Credit Union ("Health One"), the Michigan chartered, federally insured credit union which established First Mortgage. The Plaintiffs also seek to hold liable New England Federal Credit Union ("NEFCU" or "New England"), a credit union which ultimately purchased certain Health One assets and liabilities after Health One was placed in conservatorship because of financial insolvency. (*Id.* ¶¶ 133-181.) Plaintiffs seek to pierce the corporate veil to hold Health One liable, and pursue New England under a theory of successor liability.

All three Defendants—First Mortgage, Health One, and New England—have filed motions to dismiss, advancing several alternative arguments for dismissal. (ECF Nos. 20, 26.) On April 17, 2018, this Court dismissed Plaintiffs' claims as barred by the one-year statute of limitations governing RESPA claims, but did not address Defendants' alternative theories for dismissal. *Ryman v. First Mortgage Corp.*, RDB-17-1757, 2018 WL 1811518 (D. Md. April 17, 2018). On June 10, 2019, the United States Court of Appeals for the Fourth Circuit reversed this Court's decision and remanded this case for further proceedings. Order, *Ryman, et al. v. First Mortgage Corp., et al.*, No. 18-1561 (4th Cir. June 10, 2019), ECF No. 28-1. On remand, Defendants seek a ruling on these alternative arguments for dismissal presented in their motions.

This Court concludes that Plaintiffs' claims against First Mortgage are governed by Michigan law because First Mortgage is a Michigan corporation. Plaintiffs claims against First Mortgage are barred by § 842a of the Business Corporation Act, Mich. Comp. Laws Ann. § 450.1842a, because Plaintiffs did not commence this lawsuit within one year of First Mortgage's notice of dissolution. Because Plaintiffs cannot pursue First Mortgage in the first instance, it cannot pursue its alleged alter ego, Health One, or Health One's alleged successor, New England. Additionally, even if Plaintiffs had asserted timely claims against First Mortgage, their claims against Health One would fail because Plaintiffs failed to adhere to the claim processing requirements of the Federal Credit Union Act, 12 U.S.C. § 1751, *et seq.* Finally, Plaintiffs claims against New England are unavailing because the Purchase and Assumption Agreement ("PAA") clearly indicates that New England did not assume any liabilities associated with the Plaintiffs. Accordingly, Defendant New England Federal Credit

Union's Motion to Dismiss (ECF No. 20) is GRANTED and the Motion to Dismiss (ECF No. 26) filed by Defendants First Mortgage Corporation and Health One Credit Union is GRANTED.

## BACKGROUND

This case follows on the heels of numerous lawsuits filed in this Court concerning the alleged Genuine Title kickback scheme. A previous Opinion of this Court discusses the history of the alleged scheme and the litigation that followed in detail. *See Ryman*, 2018 WL 1811518, at *1-4. For present purposes, this Court is concerned not with the lengthy history of the Genuine Title litigation, but with the nature of the relationship between the Defendants in this case: First Mortgage, Health One, and New England. This Section recounts the relationship between the Defendants as set forth in the allegations of the Complaint, which this Court must accept as true at this stage. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). This Court also draws upon a Purchase and Assumption Agreement ("PAA"),[1] as it is explicitly referenced in the Complaint, is integral to the Plaintiffs' successor claims, and its authenticity is undisputed. *See Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (considering newspaper article that was not attached to Complaint because it was integral to the Complaint and its authenticity was undisputed). Finally, this Court makes reference to public court filings in related matters. *See Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015) (noting that courts "may take judicial notice of docket entries, pleadings and papers in other cases

---

[1] Defendant New England originally provided a redacted version of the PAA in its Motion to Dismiss filed on September 29, 2017. (ECF No. 20-5.) On August 23, 2018, the full text of the document was filed under seal. (ECF No. 58) (*SEALED*).

without converting a motion to dismiss into a motion for summary judgment"), *aff'd*, 639 F. App'x 200 (4th Cir. May 6, 2016).

## I. The Alleged Kickback Scheme.

This case arises from the alleged wrongdoing of First Mortgage and its alleged alter ego, Health One. Plaintiffs allege that First Mortgage, a Michigan corporation doing business in Maryland, originated or brokered their mortgage loans and referred them to Genuine Title for the purposes of procuring title insurance and to facilitate the escrow and settlement process. (Compl. ¶¶ 1, 10, ECF No. 1.) They allege that these referrals were made pursuant to a "quid pro quo agreement" whereby First Mortgage branch managers, loan officers, agents, and other employees received unearned fees and kickbacks from Genuine Title in exchange for referrals of First Mortgage borrowers. (*Id.* ¶ 2.) The scheme is alleged to have taken place between 2009 and 2014, during which time First Mortgage referred over 400 loans to Genuine Title for settlement services. (*Id.* ¶ 58.)

## II. Health One's Alleged Control of First Mortgage.

Plaintiffs allege that Health One operated as First Mortgage's alter ago, exercising complete control over its operations. (Compl. ¶ 165.) At all relevant times, Health One was a Michigan chartered, federally insured credit union. (Compl. ¶ 12.) In 1996, Health One established First Mortgage as a credit union service organization, or "CUSO." (*Id.* ¶ 135.) At that time, Health One became the sole incorporator and shareholder of First Mortgage. (*Id.* ¶ 137.) Health One's officers and board of directors are alleged to have exerted complete control over First Mortgage's operations and day-to-day affairs. (*Id.* at ¶¶ 147-151.) The two entities also co-mingled funds. First Mortgage siphoned millions of dollars from First

Mortgage in the form of "bonuses," "management fees," "reserves," and "repayments." (*Id.* ¶ 153.) As a result, First Mortgage existed in a state of gross undercapitalization which required periodic loans from Health One to keep the business operational. (*Id.* ¶ 156.) Health One's consolidated financial statements allegedly show Health One and First Mortgage as one entity with intermingled financial affairs. (*Id.* ¶ 163.)

### III.    Health One's Financial Instability and the Appointment of a Conservator.

Health One allegedly became financially unstable as the result of its investments in First Mortgage. Specifically, Plaintiffs allege that Health One became insolvent because its loans to First Mortgage had a delinquency rate of more than 10%. (*Id.* ¶ 168.) Health One itself allegedly attributed its distressed financial condition to its involvement with First Mortgage. (*Id.* ¶ 164.) Health One's President, who also served as First Mortgage's President, Treasurer, and Director, blamed Health One's troubles on "activities of a revamped company subsidiary that did business as a mortgage broker service" (*i.e.*, First Mortgage) and that "the credit union got involved with this new company and they lost their shirt." (*Id.*)

On May 16, 2014, the Director of the Michigan Department of Insurance and Financial Services (the "Michigan DIFS") issued an Order placing Health One in conservatorship because it was found to be in an "unsound and unsafe condition." (*Id.* ¶ 167; Order Appointing Conservator, ECF No. 26-4.) The Order appointed the National Credit Union Administration Board (the "NCUA Board") as the conservator for Health One pursuant to Michigan Law, specifically Section 241(1) of the MCUA, MCL 490.241(1), and conferred upon it "all the rights, powers and privileges granted to a conservator under the MCUA, MCL 490.101, *et seq.* . . . ." (ECF No. 26-4 at 4.) The NCUA Board is the managing body of the

National Credit Union Administration ("NCUA"), which regulates federal credit unions. *See* 12 U.S.C. § 1751, *et seq.* Michigan DIFS chose to appoint the NCUA Board as conservator because, *inter alia*, Health One was "subject . . . to the NCUA's regulations and conditions for deposit insurance." (ECF No. 26-4 at 2.)

## IV.   Dissolution of First Mortgage.

On December 9, 2014, First Mortgage filed for dissolution with the Michigan Department of Licensing and Regulatory affairs. (Certificate of Dissolution, ECF No. 1-18.) The Certificate of Dissolution indicates that the dissolution was approved "by written consent of all shareholders or members entitled to vote in accordance with Section 407(2) of P.A. 284 of 1972, or 407(3) of P.A. 182 of 1982." (*Id.*) On January 23, 2015, notice of the dissolution was published in the Detroit Legal News, a newspaper circulated in Wayne County, Michigan. (Affidavit of Publication, ECF No. 26-11 at 3.)

## V.   New England's Purchase of Health One Assets and Liabilities.

After First Mortgage's dissolution, New England purchased certain assets and liabilities associated with Health One as a result of a sale approved by the National Credit Union Administration Board. (Compl. ¶¶ 12, 172.) On December 12, 2014, as the result of a petition filed by Michigan DIFS, the Circuit Court for the 30th Judicial District for the State of Michigan issued an order placing Health One into receivership and appointing the NCUA Board as receiver and liquidating agent with "all of the rights, powers, and privileges provided by the laws of [the state of Michigan] with respect to a receiver of a banking institution, as well as those provided in the Federal Credit Union Act, 12 U.S.C. § 1751, *et seq.*, and the rules promulgated thereunder." (*Id.* ¶ 173; Order Appointing Receiver, ECF No. 26-5.)

On that same day, New England entered into a Purchase and Assumption Agreement ("PAA") with NCUA, thereby acquiring "certain assets" and assuming "certain shares and liabilities" of Health One. (Compl. ¶ 173; ECF No. 58 at 1 (*SEALED*).) The PAA sets forth that the Liquidating Agent (the NCUA Board) agreed to transfer the right, title, and interest in the assets listed in Schedule B to the Assuming Credit Union (New England), and retained its interest in the assets listed in Schedule C. (*Id.* § 3.) The parties agree that any assets remaining under the control of the NCUA Board were subsequently liquidated. As a result of the transaction, all Health One shareholders automatically became New England shareholders and members. (Compl. ¶ 174.)

## VI.     Procedural History.

Plaintiffs commenced this lawsuit on June 26, 2017 bringing a single Count alleging a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a) and (b). Subsequently, Defendants filed two separate Motions to Dismiss (ECF Nos. 20, 26) arguing, *inter alia*, that Plaintiffs had failed to adequately plead their entitlement to equitable tolling under RESPA. On April 27, 2018, this Court dismissed the Complaint on that ground and did not reach the Defendants' alternative arguments for dismissal. *Ryman v. First Mortgage Corp.*, RDB-17-1757, 2018 WL 1811518 (D. Md. April 17, 2018). Plaintiffs appealed to the United States Court of Appeals for the Fourth Circuit. While that appeal was pending, the Fourth Circuit issued a decision in five related cases decided by this Court and consolidated under the caption *Edmonson v. Eagle National Bank*, No. 18-1216(L). In *Edmonson*, the Court of Appeals held that plaintiffs—all of whom had alleged kickback schemes involving Genuine Title—had adequately pled equitable tolling. Following its decision in *Edmonson*, on June 10,

2019, the United States Court of Appeals for the Fourth Circuit summarily reversed and remanded this case for further proceedings. Order, *Ryman, et al. v. First Mortgage Corp., et al.*, No. 18-1561 (4th Cir. June 10, 2019), ECF No. 28-1.

On remand, Defendants filed Correspondence (ECF No. 44) with this Court seeking its ruling on several alternative arguments previously raised in their Motions to Dismiss (ECF Nos. 20, 26), which were not addressed in this Court's prior opinion. Among these were Health One and First Mortgage's argument that Plaintiffs' claim is barred by § 842a of the Business Corporation Act, Mich. Comp. Laws Ann. § 450.1842a, a statute of repose applicable to dissolved corporations.[2] In response, Plaintiffs filed a Supplemental Memorandum of Law (ECF No. 56) seeking certification of several issues to the Michigan Supreme Court, all of which relate to the application of the Michigan statute of repose. The parties' filings prompted this Court to conduct a motions hearing concerning the outstanding issues identified by the Defendants and the possibility of certifying questions to the Michigan Supreme Court.

## STANDARD OF REVIEW

### I.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1).

Defendant Health One seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction over the claims against it because Plaintiffs failed to adhere to the claim processing requirements of the Federal Credit Union Act. A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought

---

[2]     New England has adopted the statute of repose argument advanced by Health One and First Mortgage. (ECF No. 20-1 at 9 n.6; ECF No. 28 at 18.)

by a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D. Md. 2005). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). In a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, however, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. The court, therefore, "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 650 (4th Cir. 2018).

## II. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[3] Generally, to withstand a

---

[3]     A 12(b)(6) motion is an appropriate vehicle through which the Court may evaluate affirmative defenses, such as the statute of repose defense presented here, "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *accord Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).  In this case, it is appropriate to consider the Defendants' statute of repose defense under Rule 12(b)(6) because the Complaint attaches First Mortgage's Certificate of Dissolution, thereby implicating the Michigan statute of repose applicable to dissolved Michigan corporations.  (Certificate of Dissolution, ECF No. 1-18 at 2.)

motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (internal quotations and citation omitted). "A formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Similarly, "an unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## ANALYSIS

Defendants seek this Court's ruling on several alternative theories of dismissal. These arguments are as follows: (1) the argument of all Defendants that all claims against First Mortgage are barred by § 842a of the Business Corporation Act, Mich. Comp. Laws Ann. § 450.1842a, a Michigan statute of repose applicable to dissolved corporations; (2) Health One's argument that Plaintiffs' claim is barred for lack of subject matter jurisdiction; and (3) New England's argument that it is not a successor to Defendant Health One Credit Union's liabilities. Plaintiffs seek certification of several issues related to Defendants' statute of repose defense.

This Court once again finds that Plaintiffs' failure to timely assert their claims requires dismissal of their Complaint. Plaintiffs' claims against First Mortgage Corporation are barred by § 842a, because Plaintiffs did not assert a claim against First Mortgage within a year of its published notice of dissolution. Unlike RESPA's statute of limitations, this statute of repose

is not susceptible to equitable tolling. Plaintiffs' inability to sue First Mortgage directly also forecloses their derivative claims against Health One and New England. Alternatively, even if Plaintiffs had asserted timely claims against First Mortgage, this Court would lack subject matter jurisdiction to hear claims against Health One because Plaintiffs did not file a claim with the NCUA Board as required by the Federal Credit Union Act, 12 U.S.C. § 1751, *et seq.* Additionally, any claims against New England would fail because the PAA clearly indicates that New England did not assume any liabilities related to Plaintiffs' claims. Finally, as Michigan law clearly bars Plaintiffs' claims, certification to the Michigan Supreme Court is unnecessary.

## I. The Michigan Statute of Repose Bars Suit Against First Mortgage Corporation.

Michigan law provides that "[a] dissolved corporation may . . . publish notice of dissolution at any time after the effective date of dissolution and request that persons with claims against the corporation present them in accordance with the notice." Mich. Comp. Laws Ann. § 450.1842a(1). The notice must be published in a "newspaper of general circulation in the county where the dissolved corporation's principal office . . . is or was last located" and warn that any claim which is not asserted against the corporation within one year of the notice will be barred. § 450.1842a(2)(a), (b). If these notice procedures are followed, all claims advanced after one year has elapsed are barred.

The Michigan Court of Appeals has explained that "§ 842a is not a statute of limitations" and it may bar even "latent claims or claims that could not reasonably be brought within one year of notice of corporate dissolution." *Gilliam v. Hi-Temp Prods. Inc.*, 260 Mich. App. 98, 113-14, 677 N.W.2d 856 (Mich. Ct. App. 2003). Rather, § 842a "is a statute of

repose" which strictly "bars all contingent claims regardless of their nature or date of discovery." *Pettit v. Duro Supply Co.*, 2003 WL 22976175, at *1 (Mich. Ct. App. 2003) (unpublished). The Michigan courts have rigorously enforced the statute even under circumstances in which it would have been impossible to assert claims against the corporation within the one-year period. *Id.* at *1-3 (barring lawsuit arising from asbestos-induced cancer contracted five years after the notice publication).

The Fourth Circuit's holding that Plaintiffs have adequately pled equitable tolling does not prohibit the enforcement of § 842a because it is a statute of repose, not a statute of limitations. *Cal. Pub. Emps' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051 (2017) ("[T]he Court repeatedly has stated in broad terms that statutes of repose are not subject to equitable tolling."); *First United Methodist Church v. United States Gypsum Co.*, 882 F.2d 862, 866 (4th Cir. 1989) ("[A] statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason . . . ."). As the United States Court of Appeals for the Fourth Circuit once acknowledged, "[a]t some point, 'the right to be free of stale claims . . . comes to prevail over the right to prosecute them.'" *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 201 (4th Cir. 1990) (quoting *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S. Ct. 756 (1974)).

In this case, Plaintiffs failed to submit a claim within one year of First Mortgage's published notice of dissolution. First Mortgage filed for dissolution with the Michigan Department of Licensing and Regulatory affairs on December 9, 2014. (Certificate of Dissolution, ECF No. 1-18.) On January 23, 2015, notice of the dissolution was published in the Detroit Legal News, a newspaper circulated in Wayne County, Michigan. (Affidavit of

Publication, ECF No. 26-11 at 3.) The notice stated that First Mortgage had been dissolved and provided instructions for submitting a claim against the corporation. (*Id.*) In conformity with § 842a, the notice explicitly warned that "[a] claim against the Corporation will be forever barred unless a proceeding to enforce the claim is commenced within one (1) year after the publication date of this newspaper notice." (*Id.*) There is no dispute that Plaintiffs failed to pursue its claims within one year of the notice and that they did not commence this lawsuit until June 26, 2017.

Plaintiffs nevertheless contend that there were "substantive irregularities" with First Mortgage's dissolution which relieved them of their obligation to pursue a claim during the one-year period.[4] (ECF No. 29-1 at 33 n.16.) Specifically, Plaintiffs complain that the Certificate of Dissolution was signed by Gary Luverna in his purported capacity as President of First Mortgage, even though First Mortgage's annual report listed James Perna as President. (*Id.*) Additionally, the Certificate indicates the dissolution was approved by written consent of the shareholders "in accordance with Section 407(2) of P.A. 284." Under this provision of Michigan law, Plaintiffs argue, a corporation may permit an act of shareholders to be taken without a shareholder meeting. However, so the argument goes, First Mortgage's shareholders

---

[4] Additionally, Plaintiffs argued for the first time at the motions hearing that they were entitled to pursue their claims under a narrow exception to the statute of repose codified at Mich. Comp. Laws § 450.1842a(4). Under that section, "a claimant having an existing claim known to the corporation at the time of publication . . . and who did not receive written notice under section 841a is not barred from commencing a proceeding until 6 months after the claimant has actual notice of the dissolution." § 450.1842a(4). Plaintiffs, however, cannot avail themselves of this exception because they did not allege a lack of actual notice of the dissolution or that they *ever* filed a claim in accordance with the procedures of § 842a. It is worth noting that Plaintiffs' Complaint attaches the Certificate of Dissolution, rendering their claimed lack of actual knowledge without merit. (ECF No. 1-18 at 2.)

excised certain portions of the company's Articles of Incorporation that would have permitted this type of action.

Plaintiffs' arguments are foreclosed by a dispositive decision of the Michigan Court of Appeals. In *Freeman v. Hi Temp Prods.*, 229 Mich. App. 92, 99, 580 N.W. 2d 918 (Mich. Ct. App. 1998), the Michigan Court of Appeals explained that "effective dissolution" must occur before notice of dissolution is disseminated, and that dissolution "is effective at the time it is endorsed" by the Administrator of the Michigan Bureau of Corporations and Securities. *Freeman*, 229 Mich. App. at 99-100, 580 N.W.2d 918 (quoting Mich. Comp. Laws Ann. 450.1131(6)). There is no dispute that First Mortgage's dissolution was endorsed by the Administrator on December 9, 2014. Accordingly, First Mortgage's dissolution became effective on that date, permitting the notice of dissolution to be published and the clock to start for the statute of repose. There is no need to consider whether an ineffective dissolution bars operation of the statute of repose; the dissolution was effective when the Administrator endorsed it.

Moreover, the perceived defects associated with the Certificate of Dissolution do not render the dissolution ineffective. As Plaintiffs acknowledge, the Certificate indicates that the dissolution was approved by written consent of the shareholders "in accordance with Section 407(2) of P.A. 284," Mich. Comp. Laws § 450.1407(2). Under this provision of Michigan law, a corporation may take action without a shareholder meeting if it has the unanimous consent in writing from all shareholders. It is undisputed that Health One was First Mortgage's sole shareholder and that it gave its consent to dissolve the corporation. Michigan law authorizes dissolution in this manner. The excised portion of the Articles of Incorporation to which

Plaintiffs refer have no bearing on this statutorily conferred right. Had it not been excised, this provision would have permitted corporate action without a meeting so long as the holders of a minimum number of votes necessary to take the action had signed consents. (ECF No. 59-2 at 3). The absence of this provision from the Articles in no way inhibited Health One from authorizing dissolution. Finally, Plaintiffs have provided no authority to support its argument that the dissolution was ineffective because the Certificate was signed by Gary Luverna instead of James Perna.[5] Accordingly, dissolution was effective—both because the dissolution was properly authorized under Michigan law and because the Administrator endorsed the Certificate.[6] First Mortgage's effective dissolution and properly published notice permits it to seek shelter behind the statute of repose and bar Plaintiffs' claims against it.

## II.  The Derivative Claims Against Health One and New England are Barred.

Plaintiffs' claims against Health One and New England are entirely derivative of their claims against First Mortgage: Plaintiff seeks to pierce the corporate veil to sue Health One, and attack New England by way of successor liability. Accordingly, "if Plaintiffs' underlying RESPA claim against FMC fails for any reason, their requests to hold Health One and NEFCU liable for FMC's alleged conduct must also fail as a matter of law." *Ryman*, 2018 WL 1811518, at *6. As all claims against First Mortgage are now forever barred, so also are the claims against Health One and New England.

---

[5] Plaintiffs do not renew this argument in their Supplemental Memorandum (ECF No. 56), in which they request certification to the Michigan Supreme Court.

[6] Even if the Certificate of Dissolution was deficient in some way, the Administrator is permitted to endorse the document if it "substantially conforms to the requirements" of Michigan law. *Freeman*, 229 Mich. App. at 100, 580 N.W.2d 918 (quoting Mich. Comp. Laws Ann. § 450.1131(2)).

During the motions hearing, Plaintiffs argued that an "alter ego which abused the corporate form," as Health One is alleged to have done, should not be able to obtain the benefit of the Michigan statute of repose. The Michigan courts hold otherwise. Under Michigan law, a shareholder pursued under a veil piercing theory may assert the same defenses applicable to the corporation. *See Quick-Sav Food Stores, Ltd. v. Estate of Mattis*, No. 285414, 2010 WL 173601, at *4 (Mich. Ct. App. Jan. 19, 2010) (unreported) (holding that, under veil piercing theory, corporation and its targeted shareholder are treated as one and the shareholder may assert a statute of limitations defense applicable to the corporation (citing *Belleville v. Hanby*, 152 Mich. App. 548, 394 N.W. 2d 412 (1986))). Pursuant to these authorities, Health One may avail itself of First Mortgage's statute of repose defense, and fend off Plaintiffs' claims.

## III. This Court Lacks Jurisdiction Over Claims Against Health One.

Even if Plaintiffs had timely pursued First Mortgage, their claims against Health One would fail because they did not follow the procedures established by the Federal Credit Union Act, 12 U.S.C. § 1751, *et seq.* The Federal Credit Union Act "provides a detailed, comprehensive administrative claims procedure for individuals to assert their rights against" federally insured credit unions. § 1751(b)(3)-(7). The Act prevents this Court from exercising jurisdiction over "any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any credit union for which the [NCUA] Board has been appointed liquidating agent, including assets which the [NCUA] Board may acquire from itself as such liquidating agent. . . ." 12 U.S.C. § 1787(b)(13)(D)(i); *see also Winston v. Interfaith Fed. Credit Union*, 2015 U.S. Dist. LEXIS 176523, at *6-7 (D.N.J. Oct. 26, 2015), *report and*

*recommendation adopted by* 2016 U.S. Dist. LEXIS 24991 (D.N.J. Feb. 24, 2016) (dismissing claims for lack of subject matter jurisdiction because plaintiff failed to file an administrative claim with the NCUA Board).

In this case, the NCUA Board was appointed as the receiver and liquidating agent of Health One, a federally insured credit union, with "all of the rights, powers, and privileges provided by the laws of [the state of Michigan] with respect to a receiver of a banking institution, *as well as those* provided in the Federal Credit Union Act, 12 U.S.C. § 1751, *et seq.*, and the rules promulgated thereunder." (Order Appointing Receiver, ECF No. 26-5) (emphasis added). Plaintiffs do not allege that they filed a timely claim with the NCUA Board. Accordingly, this Court is without jurisdiction to hear the Plaintiffs' claims against Health One.

## IV.    New England Did Not Assume Liabilities Related to Plaintiffs' Claims.

Plaintiffs claims against New England fail for another independent reason: the PAA clearly indicates that New England did not assume any liabilities related to Plaintiffs' claims. "The general rule of corporate liability is that, ordinarily, a corporation which acquires the assets of another corporation is not liable for the debts and liabilities of the predecessor corporation." *Baltimore Luggage Co. v. Holtzman*, 80 Md. App. 282, 290, 562 A.2d 1286, 1289 (1989). There are four exceptions to this general rule. *Id.* "The debts and liabilities of the predecessor corporation are imposed on the successor corporation when (1) there is an expressed or implied assumption of liability; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability for debts." *Id.*

New England did not expressly assume any liabilities related to First Mortgage or the Plaintiffs' loans. The NCUA Board and New England did not enter into the PAA until December 12, 2014. By that time, there were no more First Mortgage assets or liabilities to assume as a result of First Mortgage's dissolution on December 9, 2014. This is reflected by Schedule B to the PAA, which lists the Health One general ledger accounts which New England purchased. (ECF No. 58 at 27) (*SEALED*). Listed among these assets are the entries "748000 Initial Investment – FMC" and "748100 Additional CUSO Investment." (*Id.*) Next to both entries are a dash, rather than a dollar value, indicating that these assets had no value. (*Id.*) The PAA also reveals that New England did not assume any individual accounts or loans affiliated with the Plaintiffs in this matter. Schedule D of the PAA "is an individual listing of Member Accounts and Loans that" New England assumed. (*Id.* at 3.) The definition of Schedule D explicitly indicates that any accounts or loans which are not listed would be retained by the NCUA Board and liquidated. (*Id.*) As this Court indicated during the motions hearing, Schedule D does not contain any of the Plaintiffs' names, indicating that their accounts and loans were not assumed by New England.

Plaintiffs nevertheless argue that the transaction between New England and the NCUA Board constitutes a *de facto* merger between Health One and New England or that New England is a "mere continuation" of Health One. These claims are preempted by federal law. The Federal Credit Union Act bestows the NCUA with sole authority to approve a merger between a federally insured credit union, like Health One, and any other credit union. 12 U.S.C. § 708b.101(b). As explained in *625 3rd St. Associates, L.P. v. Alliant Credit Union*, 633 F.Supp.2d 1040 (N.D. Cal. 2009), claims of *de facto* merger and similar theories of recovery necessarily

challenge the NCUA's exclusive authority to orderly administer credit union assets. *Id.* at 1047. Accordingly, Plaintiffs' alternative theories of liability are preempted by the Federal Credit Union Act.

## V. Certification to the Michigan Supreme Court is Unnecessary.

Plaintiffs seek certification of three issues to the Michigan Supreme Court. These issues are as follows:

> (1) Whether a domestic credit union formed under the Michigan Credit Union Act is a corporation for purposes of the Michigan Business Corporations Act and entitled to the protection of the Mich. Comp. Laws § 450.1842a;
>
> (2) Whether the attempted dissolution of a corporation by an act expressly prohibited by the corporation's articles of incorporation fails to comply with the requirements of Mich. Comp. Laws §§ 50.1801 and 450.1804, and renders the dissolution ineffective and a nullity; and
>
> (3) Whether a corporation's ineffective dissolution precludes application of Mich. Comp. Laws § 450.1842a, or prevents the one year claim and presentment period from running or accruing.

(ECF No. 56 at 5.)

As this Court has previously noted, the decision whether to certify a question of state law to that state's highest court "rests in the sound discretion of the federal court." *Marshall v. James B. Nutter & Co.,* RDB–10–3596, 2013 WL 3353475, at *7 (D. Md. July 2, 2013) *aff'd*, 758 F.3d 537 (4th Cir.2014); *see also Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S. Ct. 1741 (1974); *Boyster v. Comm'r of Internal Revenue Serv.,* 668 F.2d 1382 (4th Cir.1981); *Hafford v. Equity One, Inc.,* AW-07-1633, AW-06-0975, 2008 WL 906015, at *4 (D. Md. Mar. 31, 2008). In exercising such discretion, federal courts may decline to certify a question where the federal court can reach a "reasoned and principled conclusion." *Hafford,* 2008 WL 906015, at *4. When a federal court can reach a reasoned and principled conclusion, the "federal court should decide the

case before it rather than staying and prolonging the proceedings." *Arrington v. Coleen, Inc.,* 2001 WL 34117735, at *5 (D. Md. Mar. 29, 2001) (emphasis in original).

Certification is unnecessary in this case. Under the undisputed facts of this case, First Mortgage effected dissolution and properly published notice of its dissolution. Accordingly, there is no need to resolve whether an ineffective dissolution would hinder the application of the statute of repose. Plaintiffs' claims against First Mortgage—and its derivate claims against the remaining defendants—are barred because the one-year claim-filing period has long expired. There is no need to determine whether Health One is a corporation under Michigan law because it may avail itself of any defenses enjoyed by First Mortgage.

## CONCLUSION

In sum, the Michigan statute of repose bars this lawsuit against First Mortgage because Plaintiffs failed to pursue a claim against the corporation within one year of its published notice of dissolution. Plaintiffs cannot evade this absolute bar to their claims. At some point, a lawsuit—even a RESPA action—grows stale because Plaintiffs have failed to pursue it. In this case, it is the Michigan statute of repose that keeps the stale claims at bay.

Alternatively, even if Plaintiffs had asserted timely claims against First Mortgage, this Court would lack subject matter jurisdiction to hear claims against Health One because Plaintiffs did not file a claim with the NCUA Board as required by the Federal Credit Union Act, 12 U.S.C. § 1751, *et seq.* Additionally, any claims against New England would fail because the PAA clearly indicates that New England did not assume any liabilities related to Plaintiffs' claims.

Accordingly, the Defendants' Motions to Dismiss (ECF Nos. 20, 26) are once again

GRANTED.

A separate Order follows.


Dated: March 9, 2020                                    _____/s/_____
                                                        Richard D. Bennett
                                                        United States District Judge